MAY TERM, 1881, No. 34.　　　　　　　MAY 11TH, 1881.

## Kase *versus* Losee.

1. A certificate under the county seal from the clerk of the county commissioners under the act of April 19th, 1843, section 2, which certifies that the copy is "a true copy of the taxes assessed upon the Catharine Longenberger tract of land as unseated for the years 1818 and 1819, taken from the transcript or assessment of taxes remaining in the office of the commissioners of Columbia County, the same being an extract from the record of the assessment of unseated lands in said office," substantially follows the provisions of the act.

2. That the person signing the certificate is the clerk of the commissioners may be shown by parole.

3. Such certificates are primary evidence, and though they may be shown to be false and fabricated, this does not raise a question as to their admissibility.

4. The fact that the book from which the extracts were taken contained in one part of it a record of treasurer's sales, though showing irregular methods, is not conclusive against it as a record of assessments, when it is proven aliunde to be the commissioners' record.

5. It is competent to show by evidence aliunde that a treasurer's deed for taxes, executed in 1822, which set forth that the land conveyed " was assessed with county taxes for the year 1818, — cents, and 1819, — cents, and road tax for the year 1820, $1.07, and 1821, 53 cents, amounting in the whole to $1.60½," was in fact made for county taxes duly assessed against the land for those years.

6. Where, in commenting on the evidence of a witness who testified as to the existence and contents of certain tax receipts and their subsequent destruction by fire, the Court said : " It is the duty of the jury to examine that evidence with care and to be fully satisfied not only that the witness had the means of knowing the facts which he states, but also that his testimony is reliable and worthy of belief, and that he possessed intelligence and memory by which he was able to state the facts evidencing payment with such clearness as to prevent mistake," it was held to be no material error.

ERROR to the Court of Common Pleas of *Cumberland County*.

Ejectment by Simon P. Kase, Michael C. Kreitzer, and Mary, his wife, John W. Phleeger, and Rebecca, his wife, Luther K. Stine, and Matilda, his wife, John Sechler, and Mary, his wife, Addison Bower, George William Bower, and Mary Sechler, by their guardian, Dr. Henry J. Bower, and W. Gibson Bower, plaintiffs, against Jesse A. Losee, defendant.

The action was originally brought in Columbia County, but was removed, under the act of March 30th, 1875, to Cumberland County. The defendant was in possession of the land in dispute as tenant of William Longenberger and James McAlarney, executors of George Longenberger, deceased, and S. P. Wolverton.

Catharine Longenberger made application, August 19th, 1793, for 400 acres in what was then Northumberland County; a warrant was issued to her August 23d, 1793, and a survey, made July 8th, 1794, for 364 acres, and the usual allowance, was returned into the land office September 4th, 1794　The land was patented to James Wilson September

6th, 1794. Upon a judgment against the administrators of James Wilson, in the Court of Common Pleas of Berks County, a *testatum* execution was issued under which the land was sold to Jacob Bower by the sheriff of Northumberland County, and a deed executed November 25th, 1801. Bower died intestate, leaving one son, Henry, who, by deed dated July 3d, 1837, conveyed an undivided one-third interest in the land, which subsequently became vested in Kase, the plaintiff. The other plaintiffs are the heirs of Henry Bower. The plaintiffs had also become seized of all the rights of Bell and Biddle, who had at one time a claim of interest or title.

The defendant's lessors claimed under two treasurers' deeds for the land in question. The first was dated July 10th, 1820, and showed a sale to George A. Frick of the Catharine Longenberger tract, 364 acres; county tax, $1.16; road tax, $1.16; total, $2.32; sold for $5.94. The second was dated August 5th, 1822, and reciting that the Catharine Longenberger tract, " containing 216 acres, was assessed with county taxes for the year 1818, — cents, and 1819, — cents, and road tax for the year 1820, $1.07, and 1821, 53 cents, amounting in the whole to $1.60½, which remained due and unpaid for the space of one whole year previous to the second Monday of June, 1822," conveyed the said tract to George A. Frick for $5.23. By sundry conveyances the title of Frick became vested in the lessors of defendant. They also claimed title under the statute of limitations. A summons in ejectment was issued by Frick June 1st, 1840, under which he obtained judgment November 15th, 1841, and he was put in possession under a writ of *habere facias* October 24th, 1842. The plaintiffs entered on the land in the summer of 1863, and an action of ejectment was brought against them August 1st, 1863. The question of the title to this land was before this Court in the cases of McReynolds *v.* Longenberger, 7 P. F. Smith, 13, and 25 P. F. Smith, 13.

Upon the trial the plaintiffs, after showing their record title as above set forth, read the deposition of Christian Strack, *inter alia*, as follows: " I was one of the acting administrators of Dr. Henry Bower, deceased; Dr. William Bower was the other ; I am the only surviving administrator ; the papers of the said testator were left with me; they were in my possession about fourteen years, until my house was burnt, which took place in 1852, on the 29th day of February ; . . . . I learned that there had been a treasurer's sale of the Catharine Longenberger tract of land about the year 1820 ; I can't say that I examined the tax sales; I had them examined, but when I returned home we examined the tax

[Kase *v.* Losee.]

receipts for the Catharine Longenberger tract of land, and found the tax receipts for said lands for the years 1816, 1817, 1818, 1819, 1820, and up to 1824, for State, county, and road taxes." . . . .

The defendant, having proved by oral testimony that William Krickbaum was the clerk of the commissioners of Columbia County, offered in evidence the following paper:

" Among the records of the commissioners' office of Columbia County there is contained, among other things, as follows, under the heading, to wit:

" *Return of Unseated Lands made by the Assessors of Mifflin Township at the Triennial Assessment,* 1817.

| Warrantee names. | Owners. | Acres. | County Tax. 1818. | Road. 1818. | County. 1819. | Road. 1819. |
|---|---|---|---|---|---|---|
| Longenberger Cath.,. | G. Long. | 364 | 58 | | 58 | |

" I hereby certify the above to be a true copy of the taxes assessed upon the Catharine Longenberger tract of land as unseated for the years 1818 and 1819 ; taken from the transcript of assessment of taxes remaining in the office of the commissioners of Columbia County,—the same being an extract from the record of the assessment of unseated lands in said office.

　　　" Attest :　　　　　　　　WILLIAM KRICKBAUM,
　　　　　　　　　　　　　　　　　　　　" Clerk.
"COMMISSIONERS' OFFICE, BLOOMSBURG, PA., December 4th, 1878."

The offer was objected to on the ground that the paper does not appear to have been certified or attested by the clerk of the commissioners of, Columbia County, and that the original record from which this paper is made was in court, and showed this paper to be false and manufactured.

The offer was admitted under exception, and this constituted the first assignment of error.

The defendant called C. W. McAlarney, who testified that he had recently examined the books in the commissioners' office of Columbia County, and had made a copy from those containing the assessment of the Catharine Longenberger tract, and that it was a correct copy, even as to the spelling of the words. Upon cross-examination the witness testified that he did not know the office to which he had gone to be both the treasurer's office and commissioners' office ; that he went into what was represented to him to be the commissioners' office, and that one of the counsel for defendants called off

[Kase *v.* Losee.]

the entries as he made them. The copy identified by the witness was as follows:

*Return of Unseated Lands made by the Assessor of Mifflin Township at the Triennial Assessment, 1817.*

| Warantees' names. | Owners' names. | Acres. | Adjoiners, Waters, etc. | County Tax. 1818. | Road Tax. 1818. | County Tax. 1819. | Road Tax. 1819. |
|---|---|---|---|---|---|---|---|
| Dewees, George, . . . | | 421¼ | Cottinger. | 67 | | 67 | |
| Derr, George, . . . . . | U. S. Bank. | 407¼ | | 65 | | 65 | |
| Davidson, James, . . . | . | 400 | T. Cox. | 64 | | 64 | |
| Dunlap, John, . . . . . | | 400 | | 64 pd | 64 pd | 64 pd | 64 pd |
| Doneldson, John, . . . | U. S. Bank. | 400 | | 64 | | 64 | |
| Davidson, Thomas, . | do. | 400 | | 64 | | 64 | |
| Leoman, Thomas, . . | do. | 242 | | 39 pd | 39 pd | 39 pd | |
| McCalley, John, . . . | W. Stewart. | 391 | | 63 | | 63 | |
| Longenberger, Geo., . | T. Bellos. | 396 | | 64 | | 64 | |
| Longenberger, Cath., | G. Long. | 394 | | 58 | | 58 | |

This paper was offered in evidence for the purpose of explaining why the deed of July 10th, 1820, contains " road tax, 58 cents" for each year, as well as county tax, and of showing that the road taxes were the same as the county taxes, and that it was the custom only to mention the county taxes in the column for each year except when a payment was made, in which event both kinds of taxes were carried out in full.

The admission of this evidence, under objection, constituted the second assignment of error.

The treasurer and commissioners occupied the same room, and the book from which the foregoing extracts were made had in one end a record of the treasurer's sales.

The defendant offered in evidence the treasurer's deed of August 5th, 1822, and in order to show that the recital therein of road taxes should have been county taxes, they proposed to follow it up with the production of the original return of the triennial assessment of Mifflin township for the year 1820, which shows the assessment of 216 acres in the name of Catharine Longenberger, valuation $324, tax $1.07, and certified extracts of the assessment of unseated lands in said township, for the years 1820 and 1821, showing the assessment of a county tax for $1.07 for the former year, and of 53½ cents for the latter year, and also notes of the testimony of George A. Frick, since deceased, taken at a former trial to the effect that " I never altered it. Esquire Wilson had the

[Kase v. Losee.]

deeds printed for 1818 and 1819, and got more than he wanted, and used them for the next sale," with proof that the treasurer's sale-book for 1822 could not be found.

This evidence was admitted under objection, and constituted the third assignment of error.

The Court below, HERMAN, P. J., charged the jury as follows: ·

"Under these instructions you will perceive that the validity of the tax sale of 1820, or that of 1822, or both, is the only proper subject for your consideration.

"By the statutes of this State unseated lands are made liable for their share of public taxes according to their value. As the owners may be non-residents or unknown, the policy has been to charge the lands themselves with the taxes, and to enforce payment by a sale of the lands charged. In order, however, to make a valid sale for taxes, certain requisites, without which no title will pass to the purchaser, are necessary. The land must have been unseated at the time of the assessment of the taxes. An assessment must have been made by competent authority identifying the land assessed by the adjoiners or otherwise, with reasonable certainty; the taxes must have been due and unpaid for one whole year before the sale; the land must have been sold by the treasurer of the county, and his deed therefor must be acknowledged in open court. Where all these requisites exist, and there is no redemption from the sale within two years, the title of the former owner is divested and that of the purchaser becomes complete. But if either of them be absent no title passes by the sale. When land is assessed as unseated the presumption is that that is its condition until the contrary is shown. When unseated lands are described, valued, and returned by the assessor under a warrant from the county commissioners for that purpose, and the commissioners have charged them with taxes, an assessment has been made by competent authority; and if the owners suffer such taxes to remain unpaid for one whole year, the treasurer without a warrant from the commissioners may make a sale and convey a good title to the purchaser. But the treasurer has no authority to make an assessment. He is, under the statute, merely an executive officer, empowered to enforce, by a sale, charges duly made and ripe for such action before his duty begins. There is no particular form or mode prescribed by law in which the books shall be kept and the assessment made. Each county may have a practice of its own. If the assessment is actually made, the manner of doing it is not material.

"As evidence of an assessment of taxes, for the non-pay-

ment of which the treasurer's sale of 12th June, 1820, was
made, the defendants have given in evidence the original
return of the triennial assessment for Mifflin township for
the year 1817, brought from the commissioners' office of
Columbia County, with the proper warrants of the commis-
sioners to the assessors, which, among other tracts, contains
the following: " Warrantee, Catharine Longenberger, acres
364, rate 1; owner, G. Long, rate 364, 5–1. They have also
given in evidence a certified paper purporting to be an extract
from the assessment of unseated lands, certified by the clerk
of the commissioners of Columbia County, under the county
seal, to be a true copy of the taxes assessed upon the Catharine
Longenberger tract, for the years 1818 and 1819, taken from
the assessment remaining in the commissioners' office of the
said county, and showing the following extract:

| Warrantee. | Names. | Owners. | Acres. | County Tax. 1818. | Road. 1818. | County. 1819. | Road. 1819. |
|---|---|---|---|---|---|---|---|
| Longenberger, . . | Catharine. | G. Long. | 364 | 58 | | 58 | |

" The second section of the act of 19th April, 1843 (Pur-
don's Digest, 629, p. 47), provides that certified extracts from
the assessment books of unseated lands, and certified by the
clerk of the commissioners under the county seal, to be a
true copy of the taxes assessed upon such tract or tracts,
taken from the assessment remaining in the commissioners'
office, shall be received in evidence in all the courts of this
Commonwealth. In obedience to this plain direction of the
law this certified paper was received in evidence. The law
presumes it to be a true extract until the contrary appears
in the evidence. If it be a true extract, as certified to by
the commissioners' clerk, it shows an assessment and charge
of county taxes against the Catharine Longenberger tract
for the years 1818 and 1819, for the payment of which the
land itself was bound. In connection with this they have
also given evidence of a treasurer's sale of unseated lands
for the years 1818 and 1819, made 12th of June, 1820, show-
ing a sale and deed to George A. Frick of the Catharine
Longenberger tract, 364 acres; county tax, $1.16, road tax,
$1.16, total, $2.32; sold for $5.94. The deed is dated 10th
July, 1820, and is duly acknowledged. If you find that
this tract was duly assessed and charged with taxes by com-
petent authority for the years 1818 and 1819, as shown by
the certified extract in evidence, and any of such taxes re-
mained due and unpaid for one whole year before the treas-
urer's sale, then the sale and deed made by him for such
taxes conveyed the title to the purchaser, and divested the

[Kase *v.* Losee.]

title of the then owner of the land. The recital in the treasurer's deed of more taxes than appear to have been charged upon the books, does not in itself vitiate the sale. If there were any taxes due and unpaid for one whole year before the sale, whether they were for county or road purposes, the sale, if made for such unpaid taxes, was valid. But if such taxes were paid before the sale, then the sale was void; and the purchaser took no title whatever under it.

. " You will have out with you the certified paper referred to, and also the books relied upon as evidence to show a valid assessment of taxes against this tract by the county commissioners; and whether or not a valid assessment of taxes was made against it for the years 1818 and 1819, by the county commissioners, as alleged by the defendants, and whether or not the treasurer's sale of 1820, to George A. Frick, was made for any of such taxes so assessed, and remaining due and unpaid for one whole year before the sale, are questions we submit to you upon all the evidence.

" [In support of the sale and deed of the treasurer to George A. Frick, dated 5th August, 1822, the defendants have given in evidence the original return of the triennial assessment for Mifflin township for the year 1820, brought from the commissioners' office of Columbia County, with the proper warrants of the commissioners to the assessors, which among other tracts contains the following:

" ' Warrantee, Catharine Longenberger; adjoiners, etc., A. Clark; acres, 216; valuation, $324; tax, $1.07.' They have also given in evidence a certified extract from the assessment of unseated lands, certified by the clerk of the commissioners of Columbia County, under the county seals, to be a true copy of the taxes assessed upon the Catharine Longenberger tract as unseated for the years 1820 and 1821, taken from the transcript or assessment of taxes remaining in the commissioners' office of said county, showing a county tax of $1.07 for 1820, and a county tax of 53½ cents for 1821. It appears that the treasurer's sale book of the sales made in 1822 is not to be found; but the deed of the treasurer recites such sale to George A. Frick, for the consideration of $5.23. It recites county taxes for 1818 and 1819, blank; and road tax for 1820, $1.07, and road tax for 1821, 53½ cents. The deed is duly acknowledged.

" Now, you will observe that this deed recites that the sale was made for road taxes for 1820 and 1821, but there is no evidence of any assessment of road taxes for those years against this tract. The recital in the deed is the only mention of road taxes made in connection with it for the years 1820 and 1821. The amount of taxes in the deed,

however, corresponds in each year with the amount of county tax, as shown by the certified extract, for the same years. It is contended by the defendants that the recital in the deed that the sale was made for road taxes, is a mistake ; and that in fact the sale was made for county taxes duly assessed against the land for those years. Whether or not it was made for road taxes, or for county taxes for the corresponding years, is a question we submit to you. You will have out with you the deed, together with the certified extract and the books relied upon to show a valid assessment of county taxes for the years 1820 and 1821, and you will have to determine for yourselves, from all the evidence, whether, in fact, the sale was made for road taxes or county taxes. If you find that it was for road taxes, then the treasurer's deed of 5th August, 1822, conveyed no title, as there is no evidence of an assessment of road taxes for 1820 and 1821. But if you find it was for county taxes charged by the county commissioners against the land for the years 1820 and 1821, based upon the valuation of the triennial assessment of 1820, which taxes remained due and unpaid for one whole year before the sale, then the purchaser, George H. Frick, acquired thereby the legal title.]

" When there has been a valid assessment of unseated land, and a sale for taxes which have remained due and unpaid for one whole year before the sale, and there is an allegation of payment of the taxes before the sale by the owner, or some other person inuring to his benefit or having an interest in the lands, the burden of proof is upon him alleging such payment."

The Court answered certain points of the plaintiffs, *inter alia*, as follows :

" Fourth. That while charges upon a tract of land made by the commissioners are evidence of assessment, yet where it is shown that such charges were not made for the purpose of, and as assessments for the years corresponding with such alleged assessments, such charges are explained, and do not constitute valid assessments."

" Answer : This point is answered in the affirmative. If the charges were not made by the commissioners for the purpose of, and as assessments for the years corresponding with the alleged assessments, such charges would not, in themselves, constitute valid assessments ; but still, the records of the commissioners' office, charging the land as unseated, with arrears of taxes, are evidence for the jury, to be considered by them in determining whether a valid assessment was in fact made."

" Seventh. That it is too late now, over fifty-six years

[Kase v. Losee.]

from the date of the treasurer's deed of 1822, and the frequent sales and conveyances from that date, made by the owners at that time and since, and the erection of valuable improvements by the purchaser, to allege an error or mistake in such deed, to the effect that the recital of road taxes for which the sale was made, was in fact intended to mean county taxes. That a court of equity would not reform such deed at this time in accordance with such alleged mistakes, under such evidence of mistake as is now before the Court so as to affect these plaintiffs."

" Answer: Refused. Whether the recital in the deed of 1822, of the kind of taxes for which that sale was made, is a mistake or not, we have referred to the jury in our general charge."

" Eighth. That as to the treasurer's sale of 1822, the deed recites a sale for road taxes only; and there is no sufficient evidence that there is a mistake in such recital; and as it does not appear that the recital of road taxes means and was intended for county taxes, the defendant can claim no title by virtue of that deed."

" Answer: Refused. We have referred to this fully in our general charge."

" Ninth. That there is no evidence of any assessment of road taxes for the years 1820 and 1821, and such sale of 1822 is therefore void."

" Answer: We cannot say to you that because there is no evidence of any assessment of road taxes for the years 1820 and 1821 that therefore the sale of 1822 is void. It is true that there is no evidence of any assessment of road taxes against this tract for these years (1820 and 1821), and if you find that this sale in 1822 was, in fact, for road tax, then the treasurer's deed conveyed no title. But if you find it was made for county taxes charged by the county commissioners for the years 1820 and 1821, based upon the valuation of the triennial assessment of 1820, which remained due and unpaid for one whole year before the sale, then the purchaser, George A. Frick, acquired thereby the legal title."

" Tenth. That to make the treasurer's sales of 1820 and 1822 respectively valid, it must appear that as to the former there was a valid assessment of county taxes for the years 1818 and 1819 respectively, and the taxes assessed and unpaid for one whole year prior to 1820; and that as to the sale of 1822, it must appear there were road taxes assessed for the years 1820 and 1821 ; and that unless such assessments appear to have been made, the said sales are void."

" Answer: Refused."

[Kase *v*. Losee.]

The Court answered certain points of the defendant, *inter alia*, as follows:

"Fifth. That the deed of the treasurer is the primary and best evidence of the fact that a sale was made by him."

"Answer: This is true, and we so instruct you."

"Sixth. Therefore, if the jury find from the evidence submitted in the case that among the records of the commissioners' office of Columbia County, there appears a regular assessment of taxes upon the Catharine Longenberger tract of land for the years 1818 and 1819, or either of them, and that the land was unseated at the time, the sale made by the treasurer in 1820, as shown by his deed in the evidence in the cause, *prima facie* conveyed to and vested in George A. Frick, the purchaser, a title good in law to the said tract."

"Answer: This point is answered in the affirmative."

"Seventh. That it appearing by competent and sufficient evidence that there appears among the records of the said commissioners' office an assessment of one dollar and seven cents in the year 1820, and of fifty-three and a half cents in the year 1821, upon the said tract of land; and by the deed of the treasurer that a sale of the said tract was made by him in the year 1822, for the said amount of taxes, to George A. Frick, the said sale and deed from the treasurer conveyed to the said purchaser *prima facie* the title to the said tract."

"Answer: I cannot say as a matter of law that the deed of 5th August, 1822, by the treasurer to George A. Frick, conveyed to the latter the title to the land. This is a question for the jury, and we have fully stated the question for their determination respecting this deed in our general charge. If the sale of 1822 was made not for road taxes, as recited in the deed, but for county taxes for the corresponding years of 1820 and 1821, which had been duly and regularly charged by the county commissioners against this land, and if any of such county tax remained due and unpaid for one whole year, before the sale, then the treasurer's sale and deed conveyed a good title to George A. Frick."

"Ninth. That the title thus vested in George A. Frick could only be defeated by showing a payment of the taxes before the sale; that the only evidence offered to show such payment of taxes is contained in the deposition of Christian Strack; that these depositions are inconsistent with each other, and are positively refuted by the official records of Columbia County. Moreover, they in no part contain evidence of any payment of the said taxes before the sale; and there is, therefore, no evidence in the cause of such payment."

[Kase v. Losee.]

"Answer: If the evidence shows a treasurer's sale to George A. Frick, in 1820 or 1822, for taxes regularly assessed by competent authority against the land as unseated, and remaining due for one whole year before the sale, then such sale vested in George A. Frick a good and valid title to the land, unless in fact such taxes were paid before sale. We have said to you that where there has been a valid assessment of unseated lands, and a sale for taxes overdue one year, and there is an allegation of payment of taxes before the sale by the owner or some other person inuring to his benefit, or having an interest in the lands, the burden of proof is upon him alleging such payment. It appears from the evidence that Bell and Biddle held a mortgage upon the Catharine Longenberger tract, which was given to them by Jacob Bower in 1802. Holding this mortgage upon the land, they (Bell and Biddle) had such an interest in the land that not only made it to their interest, but gave them the right to pay the taxes assessed against the land during the continuance of the lien of their mortgage upon it. It is contended by the plaintiffs that Bell and Biddle, as such mortgagees, paid the taxes for several years before, and several years after these tax sales, as well as for the years for the taxes of which the sales were made. Whether they so paid is an important question in this cause to be determined by the jury. No receipts for the taxes have been produced; but the plaintiffs allege that receipts by the proper officer for the taxes for the years for which those sales were made had been given, and were accidentally destroyed by fire in 1852. The deposition of Christian Strack is relied upon by the plaintiffs to prove such receipts. When tax-receipts are thirty years old, and are in the possession of the proper custodian of the title-papers of an estate, such receipts, if produced, would be evidence, without proof of the handwriting of the treasurer whose signature is to them. If such receipts are destroyed, evidence may be given by parole, of their previous existence, and although the witness may not be able to give the name of the officer who signed the receipts nor the particulars of the receipts themselves, further than that they purported to have been the receipts of the proper officers for the years for which the land was assessed, yet if the testimony satisfies the jury that the taxes had been paid and receipted for before sale by the treasurer, the treasurer's sale made for such taxes so paid would be void. If Christian Strack is believed, he, as one of the administrators of Henry Bower, had the custody of his title-papers, including that of the Catharine Longenberger tract. He states that he applied for and obtained from the Court an order for the sale of this

tract in 1842; that he learned it had been sold for taxes in 1820; that he had the tax sales examined and examined the title-papers of this tract, and found tax-receipts for the years 1816, 1817, 1818, 1819, 1820, and up to 1824, for State, county, and road taxes; that the receipts were to Bell and Biddle, and appeared to come from the proper officers of Columbia County. He says these receipts were burned when the house of the witness was destroyed by fire in 1852. The defendants have also put in evidence another deposition of Christian Strack, which they rely upon to show that he has made contradictory statements about the receipts. Both of these depositions have been read in your hearing, and have been commented upon by counsel. When the title, apparently regular on its face, based upon record evidence, is sought to be overthrown or defeated by parole evidence, it is the duty of the jury to examine that evidence with care, and to be fully satisfied not only that the witness had the means of knowing the facts which he states, but also that his testimony is reliable and worthy of belief, and that he possessed intelligence and memory by which he was able to state the facts, evidencing payment with such clearness as to prevent mistake. The receipts which Mr. Strack says were destroyed, if they were the receipts of the county treasurer, were official documents of equal credit with the records in the office charging the taxes. But as the records still exist, they must be taken as *prima facie* evidence, and stand good, unless the parole proof of payment satisfies the jury that the omission to credit the payment on the books was the fault or neglect of the treasurer. What credit you ought to give to the testimony of Christian Strack is wholly for you to determine. His general character for truth has not been assailed, nor does it appear that he has any interest in this case. How far his testimony in the two depositions which have been read to you tend to show that he is inconsistent with himself, and how far his statements affect his credit, we leave wholly to your consideration. You will consider the opportunities which the witness had to acquire a knowledge of the facts stated, as well as all the circumstances stated by him, and which otherwise surround or exist in the case, and applying a sound, careful, and impartial judgment, you will determine, from the evidence, whether in fact those taxes were paid before the sale."

Plaintiffs excepted to the charge and the answers to the points.

The jury found for the defendants. Judgment was subsequently entered upon the verdict, and the plaintiffs took this writ of error, assigning as error the admission of the evidence

above set forth, that part of the judge's charge which is inclosed in brackets, and the answers to the points as above stated.

*W. F. Sadler* and *F. W. Hughes* for plaintiffs in error.

The act of 19th April, 1843, Purdon, vol. 1, p. 629, pl. 47, makes extracts from the assessment books of unseated lands, and certified by the clerk of the commissioners under the county seal, to be a true copy of the taxes assessed upon such tract or tracts, taken from the assessment "remaining in the commissioners' office," receivable in evidence. Such certificate is *per se* evidence, although merely secondary. The certificate was not admitted until a witness was called to show that Krickbaum was the clerk of the commissioners. But such certified extract is evidence only by virtue of the act of Assembly. Without this the "extract" was not evidence. The act of Assembly not having been complied with, can it be made evidence by supplemental testimony?

" When copies are made evidence by statute, the mode of authentication must be strictly pursued. The copy may be strictly accurate, yet, if the certificate be defective, it is of no avail:" Smith *v.* United States, 5 Peters, 292.

The certificate states, among other things, that it was " taken from the transcript of assessment," etc. The law knows of no " transcripts of assessments." It must be an " extract " from the " assessment books," and taken from " the assessment remaining in the commissioners' office."

It was apparent, on its face, that it was not an extract from any assessment book. There was no valuation, the very essence of an " assessment." It was not for one year, as the law requires assessments to be made. It gave amounts in separate columns, under county and road taxes, severally for the years 1818 and 1819. No assessor could legally make such an assessment, and it was therefore legally impossible that such paper could be a true copy, taken from " the assessment remaining in the commissioners' office."

The original record was in court, and showed the paper to be false and manufactured. When the record is produced the original is regarded as the best evidence: Greenleaf on Evidence, § 91; Garwood *v.* Dennis, 4 Binney, 325; Garrigues *v.* Harris, 17 Penna. State, 351; Salmon *v.* Rance, 3 S. & R., 315.

The question whether the records produced were not the primary evidence, was for the Court and not the jury: 1 Greenleaf Ev., § 84.

As to the examined copy made by McAlarney, nothing is

better settled than that a document offered to be read in
evidence must be shown to have come from the proper per-
son, or from the proper place of depositing the records of
the courts of which it professes to be a record, and the con-
tents of the document itself cannot be called in support of
such proof: 1 Greenleaf, § 508; Adamthwaite *v.* Synge, 1
Starkie, 145. McAlarney was not familiar with the office
or its records: Cuttle *v.* Brockway, 12 Harris, 147. It was
not a full copy: Starkie on Evidence, pp. 266, 272.

As to the deed of August 5th, 1822, to justify the refor-
mation of a deed, the evidence must be clear, precise, indu-
bitable: Kerr on Fraud and Mistake, 426; Bispham's Equity,
198; Martin *v.* Beren, 17 P. F. Smith, 462. The deed
alleges on its face that county taxes were not due, and that
the sale was made for road taxes. Sixty years have elapsed
since it was executed, and the parties are dead. Valuable
improvements have been erected, and rights have accrued:
Kerr on Fraud and Mistake, 436; Bispham's Equity, 193.

If the taxes on which the sales of 1820 and 1822 were
founded had been paid, then these sales were void: Dough-
erty *v.* Dickey, 4 W. & S., 146; Breisch *v.* Coxe, 81 Penna.
State, 336.

Plaintiffs showed these payments by Christian Strack.
The instruction given as to his testimony is not in accord-
ance with the rule of law which prevails as to evidence in
civil causes. The jury determines the facts from the weight
of the evidence, and it is not necessary to be satisfied beyond
a reasonable doubt, nor to be so fully satisfied as to prevent
mistake: Hiester *v.* Laird, 1 W. & S., 250; Gordon *v.* Par-
melee, 15 Gray, 416; 1 Greenleaf on Ev., §§ 1 and 2.

*C. P. Humrich* and *A. Ricketts* for defendants in error.
The acts of April 3d, 1804, section 3, and of March 29th,
1824, section 4, are a positive bar to this action: McReynolds
*v.* Longenberger, 57 Penna. State, 13; Stewart *v.* Trevor, 56
Penna. State, 374; Rogers *v.* Johnson, 67 Penna. State, 43;
Johnston *v.* Jackson, 70 Penna. State, 164; Breisch *v.* Coxe,
81 Penna. State, 336.

The judgment in ejectment recovered November 16th,
1841 related back to the issue of the writ, June 1st, 1840.
The possession obtained under it also related back, and the
plaintiffs are barred by the statute of limitations: Blackwell
on Tax Titles, 384; 3 Blackstone's Com., 210; 20 Viner's Ab.,
Trespass; Aslin *v.* Parkin, 2 Bur., 665.

PER CURIAM: The tax title upon which the controversy
hinges has been twice before this Court and fully considered.

[Appeal of George W. Pyle.]

The aspect in which it is now presented is not materially different. The certificates of the clerk of the commissioners, we think, substantially followed the provisions of the act of Assembly making them evidence. They were therefore admissible. They were certified to be extracts from the assessment on record of the assessment of unseated lands in the commissioners' office. Undoubtedly they were open to attack, and might be shown to be false and fabricated. This was attempted, but it is a mistake to suppose that this raised a question as to their admissibility to be decided by the Court. They were not secondary, but primary evidence. Evidence was given as to their truth, the original records were produced, and the question was fairly submitted to the jury, whose province it was to decide it. It was shown that the commissioners and treasurer occupied the same room for their respective offices, and the fact that the book from which the extracts were taken had in one part of it also a record of the treasurer's sales, was not conclusive against it as being also a record of assessments. Such a mode of keeping the record is irregular, but certainly does not destroy the book as evidence that the land was charged or assessed for the taxes for which it was sold, when it is shown *aliunde* to be the record of the commissioners. This might be by the oral evidence of the clerk, or by his certificate under the act of Assembly. Nor do we think that there was any material error in the manner in which the testimony of Christian Strack was submitted. The jury could not have been misled by the remarks of the learned judge to suppose that they ought to apply any other rule than that which is usual and proper in civil cases,—that they ought to be satisfied of the existence and destruction of the receipts. Upon a careful examination of all the assignments of error we can discover nothing of which the plaintiffs have any just right to complain.

Judgment affirmed.